Markman, J.
Defendant appeals as of right his jury conviction of possession with intent to deliver less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv). The trial court sentenced defendant to six months’ imprisonment and lifetime probation. We affirm.
On January 19, 1995, defendant lived in the upstairs apartment located at 802 Staples Street in Kalamazoo with his girlfriend, Rachelle Dodson, and Nicole Potts. At approximately 9:00 P.M., members of the Kalamazoo Valley Enforcement Team, a countywide narcotics unit, executed a search warrant on this apartment. After a battering ram was used to break through the apartment door, Officer Timothy Kozal was the first police officer to enter the apartment. He testified that he saw a black male wearing a multicolored shirt with white on the shoulders run through the apartment into a back bedroom. When Officer Kozal reached the bedroom, he opened the door and saw defendant, in the multicolored shirt, diving from the window toward a mattress on which Rachelle Dodson was sitting. Officer Kozal observed that the window was open and the screen was tom, *49 although it was January and cold outside. Sergeant Lawrence Belen and Officer Gary Kirtley testified that they saw crack cocaine on the window sill and two pagers on the floor in the bedroom, which defendant later stated was the bedroom that he occupied. Officer Richard Ives, who was stationed outside the apartment during the raid, heard a screen ripping, then looked up and saw a formerly intact window screen tom out and saw a piece of paper floating to the ground. When he moved to where the paper landed, he also saw several small plastic bags containing an off-white chunk substance on the ground and a small bag on the roof of a car under the window.
As the police officers took the occupants of the apartment into other rooms to question them, defendant was yelling, “don’t say nothing.” Officer Kozai did not find any dmgs in a search of defendant. His search revealed only a large roll of money in defendant’s pocket, consisting of $80 in one-dollar bills and $820 primarily in twenty-dollar bills. Defendant told Officer Kozai that the money was from gambling and his employment at a convenience store, although defendant no longer worked there at the time of the raid. There were several women and two children, in addition to the three residents, in the apartment at the time of the raid, but the only person found with drags was Nicole Potts, who had a small rock of crack cocaine in her pocket. She appeared to be intoxicated, and said that she bought her drugs on the street.
In the dining room, several officers saw a white smudge mark on the glass table that looked like it had cut marks through it. The police officers also *50 found several small plastic bags full of an “off-white substance” that the officers believed to be crack cocaine on the floor beside the table. The bags appeared to have been pushed off the table. There were also some plastic bags with comers ripped off and a box of plastic sandwich bags on the ground next to the dining-room table. Numerous plastic bags, with their comers tom out and containing a white residue that Officer Todd Weston believed was cocaine, were found in the trash. Officer Kirtley testified that between thirty and fifty rocks of crack cocaine were recovered from the apartment.
Defendant was subsequently charged with two counts: (1) possession with intent to deliver less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv), and (2) maintaining a drug house, MCL 333.7405-333.7406; MSA 14.15(7405)-14.15(7406). The prosecutor also sought an enhanced drug sentence pursuant to MCL 333.7413(2); MSA 14.15(7413)(2). At trial, Officer Kozal testified, without being qualified as an expert and without objection, that buyers of crack cocaine use twenty-dollar bills to buy a rock of crack and that ten- and twenty-dollar rocks of crack cocaine are common. He described the process by which crack cocaine is prepared and the heat sealing of the comers of plastic bags used to package the crack cocaine. He stated that the smudge marks on the table were consistent with marks left from cutting crack cocaine in preparation for packaging it, and described the method by which crack cocaine is cut for distribution. Officer Weston was then tendered as an expert in “street level narcotics.” In answer to defendant’s objection to such an expert, the trial court told the prosecutor to *51 proceed and that it would “deal with it on a particular question basis.” Officer Weston then testified about the significance of plastic “coin bags” and how crack cocaine is packaged in them and sold in ten- and twenty-dollar amounts. He stated that the white smear on the table was crack cocaine and that the plastic bags with comers tom out found in the trash contained cocaine residue and were used to package cocaine. Officer Weston testified without further objection.
Officer Kirtley was also qualified as an expert in “street level narcotics trafficking” and testified regarding the method by which drags are bought and sold in Kalamazoo. During this testimony, he stated that drug dealing was prevalent in the area of 802 Staples and that crack cocaine dealers were primarily males who would often develop a relationship with a woman who has an apartment or a house, then use the apartment or the house to sell drugs and threaten the woman to keep her silent. He also stated that drug dealers often have pagers, many twenty-dollar bills from selling twenty-dollar rocks of crack cocaine, use pieces of paper to tabulate their drug transactions and cut their rocks of crack cocaine into smaller amounts to sell, leaving smears on the cutting surface. After Officer Kirtley’s testimony, defendant moved for a mistrial, stating that drug profile evidence given by Officer Kirtley was being used as substantive evidence of guilt. Although the trial court denied defendant’s motion for a mistrial, it provided a cautionary instruction to the jury not to use the profile testimony as evidence of guilt or innocence. At the close of the prosecutor’s case, the trial court found that there was insufficient evidence that *52 defendant was maintaining a drug house and dismissed this count. The jury found defendant guilty of possession with intent to deliver less than fifty grams of cocaine. Subsequently, defendant moved for a new trial on the issues of improperly admitted profile evidence and ineffective assistance of counsel. The trial court denied defendant’s motion.
Defendant’s first claim on appeal is that the trial court improperly allowed drug profile testimony from police officers. The admission of evidence is reviewed for abuse of discretion. People v Ullah, 216 Mich App 669, 673; 550 NW2d 568 (1996). Similarly, the determination regarding the qualification of an expert and the admissibility of expert testimony is within the trial court’s discretion. People v Beckley, 434 Mich 691, 711; 456 NW2d 391 (1990). An abuse of discretion exists when an unprejudiced person, considering the facts on which the trial court acted, would conclude that there was no justification for the ruling made. Id.
Drug profile evidence has been described as an “informal compilation of characteristics often displayed by those trafficking in drugs.” People v Hubbard, 209 Mich App 234, 239; 530 NW2d 130 (1995), quoting United States v McDonald, 933 F2d 1519, 1521 (CA 10, 1991), and United States v Campbell, 843 F2d 1089, 1091, n 3 (CA 8, 1988). “A profile is simply an investigative technique. It is nothing more than a listing of characteristics that in the opinion of law enforcement officers are typical of a person engaged in a specific illegal activity.” Hubbard, supra at 239. Drug profile evidence is essentially a compilation of otherwise innocuous characteristics that many drug dealers exhibit, such as the use of pagers, the carrying of large amounts of cash, and the possession of *53 razor blades and lighters in order to package crack cocaine for sale. See id. at 238; United States v Lui, 941 F2d 844, 848 (CA 9, 1991). Such evidence “is inherently prejudicial to the defendant because the profile may suggest that innocuous events indicate criminal activity.” United States v Lim, 984 F2d 331, 334-335 (CA 9, 1993). In other words, these characteristics may not necessarily be connected to or inherently part of the drug trade, so that these characteristics could apply equally to innocent individuals as well as to drug dealers. It is for this reason that the majority of courts have held that drug profile evidence is inadmissible as substantive evidence of guilt, because “proof” of crime based wholly or mainly on these innocuous characteristics could potentially convict innocent people. Hubbard, supra at 239-240.
On the other hand, courts generally have allowed expert testimony to explain the significance of items seized and the circumstances obtaining during the investigation of criminal activity. Hubbard, supra at 239; MRE 702.[1] Even more specifically, this Court has held that a prosecutor may use expert testimony from police officers to aid the jury in understanding evidence in controlled substance cases. People v Ray, 191 Mich App 706, 707; 479 NW2d 1 (1991). For such expert testimony to be admissible, “(1) the expert must be qualified; (2) the evidence must serve to give the trier of fact a better understanding of the evidence or assist in determining a fact in issue; and (3) the evidence must be from a recognized discipline.” People v Williams (After Remand), 198 Mich App *54 537, 541; 499 NW2d 404 (1993). For example, in Ray, supra at 708, this Court determined that a police officer properly offered expert testimony that the quantity of crack cocaine, and the way the rocks of crack cocaine were evenly cut, clearly indicated that the defendant intended to sell the drugs. Even where a police officer expert witness’ testimony is “founded solely on observations of innocent conduct,” courts have upheld admission of the expert’s opinion that the “defendant’s activities indicated that he acted in accordance with usual criminal modus operandi.”[2] United States v Espinosa, 827 F2d 604, 612 (CA 9, 1987). “For that very reason, the expert testimony may be valuable to the jury.” Id. However, when the testimony at issue is a drug profile, the expert may not move beyond an explanation of the typical characteristics of drug dealing—in an effort to provide context for the jury in assessing an alleged episode of drug dealing—and opine that the defendant is guilty merely because he fits the drug profile. Such testimony is inherently prejudicial and constitutes an inappropriate use of the profile as substantive evidence of guilt.[3] See Lui, supra at 847.
Clearly, there is often a very fine line between the probative use of profile evidence as background or modus operandi evidence and its prejudicial use as substantive evidence; the admissibility of profile evi *55 dence must effectively be determined case by case. In particular, a difficulty arises in cases in which profiles are admitted because the evidence of a drug profile must resemble, to some degree, the defendant’s own circumstances and characteristics in order to be relevant, MRE 401, but when the profile begins to resemble the defendant’s circumstances and characteristics too closely, the profile can appear increasingly as substantive evidence of guilt. See United States v Quigley, 890 F2d 1019, 1023 (CA 8, 1989). In other words, once the profile is found to be relevant to the case, the court will often be faced with a gray area in which it may be obvious that the criminal profile circumstances and characteristics closely resemble those of the defendant, yet also in which the use of the profile may be the only way to explain to the jury the circumstantial evidence in the case.
This gray area is made even more difficult to navigate by the fact that profile evidence is usually offered by police officers testifying as expert witnesses. In Hubbard, this Court noted the danger that such testimony may have an “ ‘aura of special reliability and trustworthiness.’ ” Hubbard, supra at 241, quoting note, The admissibility of ultimate issue expert testimony by law enforcement officers in criminal trials, 93 Colum L R 231, 246-247 (1993). Thus, “ ‘[a] danger of prejudice exists in that a jury may accept a law enforcement officer’s testimony that the defendant was engaging in criminal behavior as substantive evidence of the defendant’s guilt.’ ” Id. Ideally, perhaps, it would be best in determining the admissibility of the profile if the witness knew nothing at all about the defendant’s case; in such a situation, the jury could draw no inference of guilt from *56 his testimony. However, such a witness practically would be unable to offer profile testimony because he would be unable to know which “innocuous” evidence needed to be addressed at trial. There are innumerable “innocuous” characteristics and circumstances that potentially could constitute elements of a drug profile; those addressed by an expert will obviously tend to be precisely those circumstances and characteristics that are, in fact, present in a given case. It is hard to fathom how the profile expert can truly be segregated from the actual facts of the case in which he is testifying. Nevertheless, it remains a matter of difficulty that, as the expert becomes increasingly familiar with the facts of the case, there is the growing risk that the jury will confuse the expert’s description of the profile for substantive evidence of a defendant’s guilt.
Therefore, difficult as it may sometimes be, courts must take into consideration the particular circumstances of a case and enable profile testimony that aids the jury in intelligently understanding the evidentiary backdrop of the case, and the modus operandi of drug dealers, but stop short of enabling profile testimony that purports to comment directly or substantively on a defendant’s guilt.
Some or all of the following factors may be helpful in distinguishing between the appropriate and inappropriate use of drug profile evidence and thus help to determine the admissibility of such evidence. First, the reason given and accepted for the admission of the profile testimony must only be for a proper use— to assist the jury as background or modus operandi explanation. See United States v Williams, 957 F2d 1238, 1241 (CA 5, 1992) (one factor showing the pro *57 file’s admission as substantive evidence was the reasoning of the court, admitting the profile for its probative value); Hubbard, supra at 242. Attorneys and courts must clearly maintain the distinction between the profile and the substantive evidence, and the former should not argue that the profile has any value in itself; it is only an aid for the jury. Second, the profile, without more, should not normally enable a jury to infer the defendant’s guilt. The prosecutor must introduce and argue some additional evidence from the case that the jury can use to draw an inference of criminality; multiple pieces of a profile do not add up to guilt without something more. Lim, supra at 335. In other words, the pieces of the drug profile by themselves should not be used to establish the link between innocuous evidence and guilt. United States v Williams, supra at 1241. Third, because the focus is primarily on the jury’s use of the profile, courts must make clear what is and what is not an appropriate use of the profile evidence. Thus, it is usually necessary for the court to instruct the jury with regard to the proper and limited use of profile testimony. See id. (failure to instruct the jury to consider the profile testimony only as background information supports the conclusion that it was admitted as substantive evidence of guilt); United States v Gomez-Norena, 908 F2d 497, 501 (CA 9, 1990) (finding no plain error when the court twice cautioned the jury to consider the profile testimony only as background material). Fourth, the expert witness should not express his opinion, based on a profile, that the defendant is guilty, nor should he expressly compare the defendant’s characteristics to the profile in such a way that guilt is necessarily implied. Quigley, supra at 1023- *58 1024 (“point by point examination of profile characteristics with specific reference to [the defendant] constitutes use of the profile not as background . . . but as substantive evidence that [the defendant] fits the profile”). Although we acknowledge that the distinction between admissible and inadmissible drug profile evidence is often highly subtle, courts nevertheless must evaluate such evidence carefully in order to determine whether it is being used to explain the significance of otherwise innocuous circumstantial evidence, or rather to demonstrate that the defendant fits the profile and is therefore guilty.
This Court in Hubbard, supra at 241, followed the majority of courts and prohibited the use of drug profiles as substantive evidence of a defendant’s guilt. Specifically, this Court determined that the drug profile evidence in Hubbard was admitted as substantive evidence for three reasons. First, the prosecutor argued that the evidence was admissible to “explain some of the reasons certain activities are undertaken, to show a consistent pattern of behavior.” Id. at 242. Second, the prosecutor specifically argued to the jmy that the profile was circumstantial evidence of defendant’s guilt. Id. at 242-243. Third, the trial court failed to give the jury a cautionary instruction limiting the use of the profile evidence. Id. at 243.
In the instant case, defendant does not contest, under the three-part expert testimony admissibility test, either that the experts were qualified to testify regarding street level narcotics dealings or that narcotics-related law enforcement is a recognized area of expertise. See People v Williams, supra at 541-542. However, defendant argues that the drug profile testimony did not merely provide the jury with a better *59 understanding of the evidence, but served as substantive evidence of his guilt.
Accordingly, we look to the facts of the present case to determine whether the drug profile evidence was admissible as background or modus operandi evidence or instead whether it embraced the ultimate issue of defendant’s guilt and was thus inadmissible. First, in the case before us, the prosecutor stated that the purpose of Officer Krrtley’s expert testimony was to educate the jury about buying and selling drugs in Kalamazoo County.[4] And, in answer to defendant’s motion for a mistrial, the prosecutor stated that her questions regarding drug dealing were focused toward the general education of the jury. This purpose is in contrast to the prosecutor’s reasoning in Hubbard, supra at 242, in which the prosecutor stated that the profile evidence was admissible to “explain some of the reasons certain activities are undertaken to show a consistent pattern of behavior.” While the prosecutor in Hubbard wanted to use the profile testimony too directly in order to prove defendant’s guilt instead of relying on the facts of the case to prove guilt when understood in the context of the profile, the prosecutor here did not intend to prove defendant’s guilt by showing merely that he fit the profile, i.e., to use the profile as substantive evidence of defendant’s guilt. Instead, the prosecutor specifically stated that she intended to use such testi *60 mony to educate the jury regarding drug transactions, which are “not within the layman’s common knowledge.” People v Williams, supra at 542. This is a permissible use of drug profile evidence.
Second, the prosecutor in this case also did not argue that the drug profile was evidence against defendant. In Hubbard, supra at 238, the prosecutor referred to the profile evidence as circumstantial evidence of the defendant’s guilt, explicitly allowing the jury to use the testimony as substantive evidence when this use was more prejudicial than probative. Here, in contrast to Hubbard, the prosecutor argued only the facts of this particular case during her closing arguments. The prosecutor did argue that the totality of the evidence found in the apartment showed that defendant possessed the crack cocaine and intended to package it and sell it, and the modus operandi testimony regarding drug dealing could have helped explain the use of some of the items found at the scene, such as a pager and large amounts of money. Such use of profile testimony is allowed, because it helps the jury to understand the implications of the evidence, but does not propose to answer the question of defendant’s guilt by itself. It appears, in our judgment, that the prosecutor here was consistent in her use of the profile testimony as general education for the jury to explain the drug trade.
Third, the trial court provided a clear limiting instruction to the jury in this case. This factor is again contrary to the court’s failure to give an instruction in Hubbard, supra at 243, which helped to persuade this Court that the drug profile there was admitted as substantive evidence. In this case, after defendant moved *61 for a mistrial following Officer Kirtley’s testimony, the trial court stated:
By stipulation of counsel, I am going to give you this instruction concerning Officer Gary Kirtley’s testimony about his experience in other drug cases. You are cautioned that the testimony concerning what happened in his other drug cases is not be used to decide whether any crime was committed in this case. This testimony that he gave concerning other drug cases was received only for background informational purposes and nothing else.
This limiting instruction clearly cautions that drug testimony, including profile testimony, other than that about the facts of defendant’s case, is not to be used as substantive evidence of defendant’s guilt. Thus, the instruction supported the prosecutor’s proposed use of the profile testimony and explicitly limited the jury’s use of such evidence. Although the instruction referred to Officer Kirtley’s testimony only, we note that this was the language to which defendant stipulated. In addition, we refuse to operate on the premise that jurors cannot comprehend the difference between substantive evidence and background testimony intended to help them understand the evidence, especially where this difference is pointed out to them. Therefore, we believe that the instruction given adequately limited the use of the profile evidence as a whole.
Fourth, the experts, Officers Weston and Kirtley, did not generally attempt to directly tie the profile testimony to defendant’s actions or characteristics in a manner that implied defendant’s guilt merely because of the connection, nor did they directly opine on the basis of such characteristics that defendant was a drug dealer. See Lui, supra at 847. Officer Wes *62 ton stated that drag dealers often try to flush drags down a toilet during a raid. This testimony was proper background testimony to explain his actions during the raid and the modus operandi of many drag dealers. See United States v Hernandez-Cuartas, 717 F2d 552, 555 (CA 11, 1983). Officer Kirtley testified about a general procedure for buying and selling drags and the effects of crack cocaine on the body, but he did not attempt to apply this profile directly to defendant’s case to prove his guilt. Rather, it was clearly meant to educate the jury generally. He also testified that in Kalamazoo the most prevalent means of selling drags was for a male dealer to develop a relationship with a woman, move into her house to sell drags, then threaten her if she tries to interfere. Although this scenario could apply to the facts of defendant’s case, Officer Kirtley did not directly apply the scenario to the facts of defendant’s case or state that by itself it provided evidence of guilt. Similarly, Officer Kirtley stated that drag dealers often use pagers and cellular phones and carry large sums of money, but he did not merely link this information to defendant in such a way that defendant’s guilt was implied merely from his resemblance to the profile. Instead, the profile testimony was an explanation of the evidence. Thus, it was left to the jury to decide whether certain innocuous items found at the alleged crime scene and personal characteristics of the defendant were a part of his drag dealing. In addition, the officers properly used their expert knowledge of the drag trade to set the background to explain the significance of evidence of a smear of cocaine with cut marks in it, small bags and comers of plastic bags containing crack cocaine, and plastic bags with the *63 comers tom off and containing a white residue believed to be cocaine. The police officers properly explained that this is how crack cocaine is generally prepared and packaged for sale, rather than for personal use. Ray, supra. This testimony by the police was admissible as expert testimony to aid the jury and did not implicate innocuous profile evidence, because this drug evidence is by no means innocuous. See United States v Webb, 115 F3d 711, 715 (CA 9, 1997). Overall, the use of expert testimony, to offer the jurors information about the drag trade from which to analyze the information in the case, was proper and did not offer innocent characteristics themselves as evidence of guilt.
However, Officer Kirtley also testified that “there are .certain areas within the city that are more prevalent or open dealing of drugs occur. One of those happens to be the area where 802 Staples Street is.” We believe that this particular statement referring specifically to defendant’s address impermissibly linked an innocuous drug profile characteristic to defendant and stated that drug dealing did take place merely because of the location of this apartment. On the basis of his general knowledge of drag dealing, he also testified that a piece of paper with tabulations of numbers found on the dining-room table was used to keep track of drug sales. Officer Kirtley did not simply testify that the tabulations were consistent with drug dealing modus operandi, but further stated that they were used for keeping track of drug sales. This testimony also impermissibly linked a fairly innocent piece of paper to the drug trade in such a manner that defendant’s guilt was implied from the profile *64 itself. In our judgment, the jury was effectively told that the profile was evidence of defendant’s guilt.
Thus, we must now determine whether the error in admitting this particular testimony was harmless. The appropriate standard for assessing a defendant’s non-constitutional allegation of error since the Supreme Court’s opinion in People v Gearns, 457 Mich 170; 577 NW2d 422 (1998), is whether the prosecutor “proved that it was highly probable that . . . the tainted evidence did not contribute to the verdictf].” Id., at 204 (Brickley, J., joined by Mallett, C.J.), 220 (Cavanagh, J., joined by Kelly, J.); People v Graves, 458 Mich 476, 482-483; 581 NW2d 229 (1998). We find that it is “highly probable” that the erroneous admission of certain portions of Officer Kirtley’s testimony did not affect the jury’s verdict. Although there is no direct evidence that defendant possessed the crack cocaine found in the apartment, which he shared with two women,[5] strong circumstantial evidence in this case pointed to defendant’s guilt, such as his frantic running through the apartment, the tom screen in his bedroom from which bags of cocaine fell to the ground, the cocaine on the bedroom window sill, and the large amount of cash in his pocket. In addition, the trial court gave the jury a cautionary instruction to disregard as substantive evidence Officer Kirtley’s testimony. Therefore, we conclude that the error was harmless.
On the basis of these facts, we find that the overwhelming part of Officer Kirtley’s and Officer Weston’s expert testimony was used as admissible modus *65 operandi evidence to assist in explaining the drug trade to the jury. This is a permissible use of drug profile evidence and did not prejudice defendant. To the extent that there was any erroneous admission of profile evidence in this case, it was harmless. Defendant was convicted on the facts of the case that showed that he was involved in dealing drugs, not as a result of innocuous evidence from a drug profile.[6]
Defendant’s other argument on appeal is that his trial attorney’s failure to object to the drug profile evidence amounted to ineffective assistance of counsel. To justify a reversal based on ineffective assistance of counsel, a defendant must show that counsel’s performance fell below an objective standard of reasonableness and so prejudiced the defendant that it deprived him of a fair trial. People v Pickens, 446 Mich 298, 303; 521 NW2d 797 (1994). Effective assistance of counsel is presumed, so a defendant “bears a heavy burden of proving otherwise.” People v Effinger, 212 Mich App 67, 69; 536 NW2d 809 (1995). A defendant must also show actual prejudice, meaning that there is a “reasonable probability that, but for counsel’s error, the result of the proceedings would have been different.” Id.
In this case, defendant must show that his attorney’s failure to object to the expert testimony regarding general information about drug dealing “deprived him of a substantial defense that would have affected the outcome of the proceeding.” People v Daniel, 207 Mich App 47, 58; 523 NW2d 830 (1994). However, *66 defendant merely states, very briefly, that his attorney’s “failure to object to improper evidence which is prejudicial renders his assistance ineffective.” In our judgment, defendant’s argument is without merit. We have determined that the expert testimony in this case was largely admissible to help explain the drug industry to the jury and that any inadmissible testimony was harmless and does not require reversal. Therefore, a defense objection to such testimony, even if it would have been advisable at certain junctures, would not have affected the outcome of the trial. Consequently, defendant’s trial attorney rendered effective assistance of counsel.
Affirmed.
Young, Jr, J., concurred.

 Various courts have also allowed the admission of profile evidence for other limited purposes that we need not address here. See, e.g., United States v Webb, 115 F3d 711, 715 (CA 9, 1997).

 This use of the term “modus operandi” refers to “a particular common method of committing a crime.” See anno: Admissibility of eocpert testimony as to modus operandi of crime—modem cases, 31 ALR4th 798, 802-803.

 Obviously, even where testimony regarding a profile is determined to be probative as background or modus operandi evidence, it must still be relevant to the case under MRE 401 and comply with the balancing test of MRE 403.

 The court allowed Officer Weston’s expert testimony regarding narcotics dealing on a question-by-question basis without requiring the prosecutor to first argue the merits of such testimony, and defendant did not object to the subsequent questions. Thus, the prosecutor’s first opportunity to explain the purpose of expert testimony about street level drug trafficking was after she moved for the qualification of Officer Kirtley as an expert witness.

 Nicole Potts was the only person in the apartment who actually had crack cocaine in her possession on the night in question.

 Because defendant did not object to the testimony of Officer Kozal, and his testimony regarding the general drug trade in Kalamazoo was cumulative to that of Officers Kirtley and Weston, we decline to address this testimony directly. See Ray, supra at 709.