# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
April 14, 2016

v

JERRY JAMAL PRATHER,

Defendant-Appellant.

No. 324653
St. Clair Circuit Court
LC No. 14-001316-FH

Before: O'CONNELL, P.J., AND MARKEY AND O'BRIEN, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(iv), possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(iv), and possession of marijuana, MCL 333.7403(2)(d). Defendant was sentenced, as a second habitual offender, MCL 769.10, to 15 months to 30 years' imprisonment for the possession with intent to deliver less than 50 grams of heroin conviction, 15 months to 30 years' imprisonment for the possession with intent to deliver less than 50 grams of cocaine conviction, and one year imprisonment for the possession of marijuana conviction. We affirm.

At approximately 10:00 p.m. on May 7, 2014, Deputy Martin Stoyan of the St. Clair County Drug Task Force began surveillance on the Elmcourt Motel in Port Huron, Michigan in preparation for the execution of a search warrant. The task force had received information earlier in the day that there were people at the hotel selling narcotics. Stoyan observed codefendant Dalvontae Williams walk back and forth several times between hotel rooms 14 and 15. Stoyan also observed another codefendant, Dondre Neal, enter and exit multiple cars that arrived for brief periods of time at the motel. Stoyan then observed defendant approach a vehicle and escort two women and two infants into room 14 of the motel.

At approximately 1:00 a.m. on May 8, 2014, members of the task force executed their search warrant on rooms 14 and 15 of the motel. Upon entering room 14, the officers observed Williams, Neal, defendant and the two women and infants defendant had brought into the room. Next to defendant, officers saw a stack of plastic sandwich bags. Inside of one of the plastic bags, officers discovered cocaine and heroin packaged within lottery tickets. Deputy Jason Sklba, another member of the task force, testified that it was very common for heroin to be packaged and sold within lottery tickets. In addition to the narcotics, officers discovered a

-1-

digital scale and a Western Union receipt. Sklba testified that drug dealers commonly use Western Union to transfer money. In room 15, officers discovered a laboratory for preparing methamphetamine.

Defendant had $345 in his pocket, and he had an additional $80 hidden under the insole of his shoe. At trial, defendant testified that the money found in his pocket was from his job working at a car wash in Detroit; he denied that there was any money hidden in his shoes. Defendant also denied that there were any drugs in the motel room and that any drugs that were found had been planted by the police.

Defendant argues that he was denied his Sixth Amendment right to the effective assistance of counsel when his trial counsel failed to object to drug profile testimony at trial. We disagree.

To preserve an ineffective assistance of counsel issue for appeal, a defendant must have moved for a new trial or an evidentiary hearing on that basis. *People v Barclay*, 208 Mich App 670, 672; 528 NW2d 842 (1995). Defendant failed to move the trial court for a new trial or an evidentiary hearing; therefore, our review of this unpreserved issue is limited to the existing record. *Id*. The ultimate constitutional issue arising from a claim of ineffective assistance of counsel claim is reviewed de novo. *People v LeBlanc*, 465 Mich 575, 582; 640 NW2d 246 (2002). Any findings of fact are reviewed for clear error. *Id*. at 579.

To prevail on an ineffective assistance of counsel claim, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To satisfy the prejudice prong of the analysis, the defendant must establish "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

Defendant argues that the performance of his trial counsel was deficient when counsel failed to object to the drug profile testimony given by officers who assisted in executing the search warrant at the Elmcourt Motel. The seminal case addressing this issue is *People v Murray*, 234 Mich App 46, 53; 593 NW2d 690 (1999), which noted that drug profile evidence is inherently prejudicial because the evidence has the potential to suggest that regular, innocuous events were instead criminal activity. In light of this, most courts "have held drug profile evidence is inadmissible as substantive evidence of guilt, because 'proof' of crime based wholly or mainly on these innocuous characteristics could potentially convict innocent people." *Id*.

But drug profile evidence is admissible "to explain the significance of items seized and the circumstances obtaining during the investigation of criminal activity," and to assist the jury in understanding evidence in drug cases. *Id*. For this testimony to be admissible: "(1) the expert must be qualified; (2) the evidence must serve to give the trier of fact a better understanding of the evidence or assist in determining a fact in issue; and (3) the evidence must be from a recognized discipline." *People v Williams (After Remand)*, 198 Mich App 537, 541; 499 NW2d

404, 407 (1993). The crucial question is whether the testimony will assist the factfinder in making the ultimate decision in the case. *People v Ray*, 191 Mich App 706, 707; 479 NW2d 1 (1991).

Deputy Sklba was the primary drug profile witness. Sklba testified that he had been employed by the St. Clair County Sheriff's Department for five years and had been a member of the drug task force for three years. Before he began working for St. Clair County, Sklba was a police officer for a different city for three years. Sklba testified that he received specialized training before joining the drug task force. This included evidence technician training, narco-terrorism training, and track and concealment training. This training and experience qualified Sklba to serve as an expert with respect to drug trafficking. In addition, the information provided by Sklba concerning drug packaging and distribution techniques is not "within the layman's common knowledge and was useful to the jury." *Williams*, 198 Mich App at 542. Finally, "[t]here is . . . no serious question that drug-related law enforcement is a recognized area of expertise." *Id*. Therefore, Sklba presented admissible expert testimony. *Id*. at 541-542.

But it still must be determined if Sklba's testimony exceeded admissible background or modus operandi evidence, or whether it was inadmissible because it embraced the ultimate issue of defendant's guilt. See *Murray*, 234 Mich App at 58-59. The Court in *Murray* set forth four factors to make this determination. First, the purpose given for the admission of the drug profile testimony must be either to provide an explanation of modus operandi or to assist the jury as background information. *Id*. at 56. The prosecutor may not argue that the profile evidence has any value beyond its assistance to the jury as modus operandi evidence or background information. *Id*. at 57. Second, the profile alone should not inherently allow a jury to infer the defendant's guilt. *Id*. at 57. "The prosecutor must introduce and argue some additional evidence from the case that the jury can use to draw an inference of criminality; multiple pieces of a profile do not add up to guilt without something more." *Id*. Third, the trial court must usually instruct the jury regarding the proper limited use of the profile testimony. *Id*. Finally, "the expert witness should not express his opinion, based on a profile, that the defendant is guilty, nor should he expressly compare the defendant's characteristics to the profile in such a way that guilt is necessarily implied." *Id*.

In reviewing the first part of the test, we conclude that Sklba's testimony regarding drug packaging and distribution went beyond providing mere background information and, in fact, served as substantive evidence of defendant's guilt. Specifically, instead of asking for general background information regarding how heroin and cocaine are packaged and sold, the prosecution asked Sklba if there was "anything unusual about the packaging of the four packets in this case or [is this] something that you've seen before?" Sklba responded that the fact that the heroin was packaged in lottery tickets indicated that it was being prepared to be sold and that "90 percent of the time" heroin is sold within lottery tickets. Sklba was then asked how cocaine is normally packaged for sale. Sklba described how cocaine is initially put into a whole plastic sandwich bag. Sklba described how the dealers will then tear off the portion of the bag containing the cocaine, tie off the end, and sell the cocaine. The remaining unsold portion of the bag is referred to as the "dealer's end." After describing this general process of how cocaine is packaged and sold, Sklba was then asked this question that went beyond the general information he could testify to: "The crack cocaine that you saw in this hotel room, did that . . . match kind

of what you're just talking about [with] the small amounts of the end of the baggie?" Sklba responded that it did in fact match the description he just gave.

During its closing argument, the prosecution argued that this testimony from Sklba, as well as his testimony regarding the Western Union receipt, was evidence of defendant's guilt. This testimony also implicates the fourth factor of the test set forth in *Murray*. While Sklba did not expressly testify that defendant was guilty, he did "expressly compare the defendant's characteristics to the profile in such a way that guilt is necessarily implied." *Id*. Therefore, the Sklyba's testimony, viewed in conjunction with the prosecution's closing argument, exceeded the limitations of drug profile evidence discussed in *Murray*.

Defendant does not argue that the trial court erred in admitting this testimony or by failing to give a limiting instruction. Instead, defendant argues that his trial counsel was ineffective because counsel failed to object to the testimony. Because Sklba's testimony was being offered as substantive evidence of defendant's guilt rather than as background information, we agree that defendant's trial counsel's failure to object "fell below an objective standard of reasonableness" and as a result constituted deficient performance. *Pickens*, 446 Mich at 338.

But to satisfy his claim of ineffective assistance of counsel, defendant must also demonstrate that he was prejudiced by this deficient performance. *Id*. at 312, 338; *Strickland*, 466 US at 687, 694-695. As defendant points out, without the drug profile evidence, the remaining evidence consists of defendant's proximity to the cocaine, heroin, and two individuals, Williams and Neal, who were engaged in drug sales. Defendant also had a large amount of cash in his pocket and had more money hidden under the insole of his shoe. In addition, defendant's own testimony was incriminating. Defendant claimed that he did not have any money hidden in his shoe despite the fact that multiple officers testified that defendant hid $80 beneath the insole of his shoe. Defendant also denied that there were any drugs when he was in the motel room and that police had planted evidence of drug distribution in the room. This contradicted Neal's guilty plea which was introduced at defendant's trial. In light of defendant's proximity to the drugs, the amount of money found in his pocket and hidden in his shoe, the short-stay traffic at the motel, and defendant's incriminating testimony, it cannot be said that a reasonable probability exists that but for the error, " 'the factfinder would have had a reasonable doubt respecting guilt.' " *Pickens*, 446 Mich at 312, quoting *Strickland*, 466 US at 695. In sum, we cannot conclude that defense counsel's deficient performance prejudiced defendant as required.

We affirm.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Colleen A. O'Brien

-4-