# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRIAN CLIFFORD WHEELER, JR,

        Defendant-Appellant.

UNPUBLISHED
December 8, 2016

No. 329524
Sanilac Circuit Court
LC No. 15-007365-FH

Before: JANSEN, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of one count delivery/manufacture of a controlled substance (methamphetamine/ecstasy), MCL 333.7401(2)(b)(*i*), one count of conspiracy to commit delivery/manufacture of a controlled substance (methamphetamine/ecstasy), MCL 333.7401(2)(b)(*i*) and MCL 750.157a, and one count of operating/maintaining a laboratory involving methamphetamine, MCL 333.7401c(2)(f). The trial court sentenced defendant to three concurrent sentences of 41 months to 20 years' imprisonment. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant and two other men, Kyle Brittich and Ben Green, were the subjects of surveillance by the Sanilac County Sheriff's Department, based on information they had received that Brittich was producing methamphetamine at his residence. Deputies testified that they entered Brittich's residence on February 24, 2015 and arrested Brittich, Green, and defendant. Deputy Michael Moore testified that once the officers on scene determined that components of a methamphetamine laboratory were present at the residence, they contacted the St. Clair County Drug Task Force to assess the laboratory. St. Clair County Sheriff's Department Deputy Nicholas Singleton, who was assigned to the St. Clair County Drug Task Force, testified he and his team responded to the residence. Referencing a series of photographs taken at the scene and admitted into evidence, Singleton testified to the function that the pictured items played in methamphetamine production. Singleton opined that based on his experience and training, the items were indicative of the existence of a methamphetamine laboratory at the location.

Singleton and Moore both testified regarding NPLEx (the National Precursor Log Exchange), an Internet database used by stores to track purchases of medicines containing

pseudoephedrine. Defendant made 15 regulated purchases between August 20, 2014 and February 18, 2015, and two attempted purchases were "blocked" on November 18, 2014 and February 18, 2015. Singleton testified that, in his experience, "normal people using Pseudoephedrine for legitimate purposes do not receive blocks."

Brittich, who had accepted a plea bargain, testified that defendant was personally involved in the production of methamphetamine on the night in issue. Defendant denied involvement in the production of methamphetamine and testified that he was only at the house to socialize and drink alcohol. Defendant admitted to having purchased a significant amount of Sudafed over a given period of time, but he claimed that he had done so at Brittich's request and that he originally did not know or suspect that Brittich was using the Sudafed to manufacture methamphetamine, although he had become suspicious of Brittich's motives for acquiring Sudafed approximately one week before his arrest.

The jury convicted defendant as described above. This appeal followed.

## II. DRUG-PROFILE EVIDENCE

Defendant first argues that the prosecution improperly introduced drug-profile evidence through the testimony of Singleton without first qualifying him as an expert. Defendant did not object to Singleton's testimony on this basis at trial. We therefore review this unpreserved claim of evidentiary error for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. "Reversal is warranted only if the error resulted in the conviction of an innocent defendant or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Taylor*, 252 Mich App 519, 523; 652 NW2d 526 (2002).

"Drug profile evidence has been described as an informal compilation of characteristics often displayed by those trafficking in drugs." *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999) (internal quotation marks and citation omitted). It is recognized that drug-profile evidence is "inherently prejudicial" and inadmissible as substantive evidence of guilt because it has the potential to suggest that "innocuous events are indicative of criminal activity." *Id*. at 53.

Four factors should be considered by a trial court when determining whether drug-profile evidence should be admitted:

First, the drug-profile evidence must be offered as background or modus operandi evidence, and not substantive evidence of guilt, and the distinction must be clearly maintained by the attorneys and the court. Second, something more than drug profile evidence must be admitted to prove a defendant's guilt; multiple pieces of profile do not add up to guilt without something more. Third, the trial court must make clear to the jury what is and is not an appropriate use of the drug-profile evidence by, e.g., instructing the jury that drug-profile evidence is properly used only as background or modus operandi evidence and should not be used as

-2-

substantive evidence of guilt. Fourth, the expert witness should not be permitted to express an opinion that, on the basis of the profile, defendant is guilty, and should not expressly compare the defendant's characteristics to the profile in a way that implies that defendant is guilty. [*People v Williams*, 240 Mich App, 316, 320-321; 614 NW2d 647 (2000).]

Here, Singleton's testimony was offered as background or modus operandi evidence. Specifically, Singleton's testimony was offered to explain to the jury the process of manufacturing methamphetamine and the significance of the items recovered in relation to the "one-pot process" of making methamphetamine.

However, Singleton was never qualified as an expert witness. A prosecutor may use expert testimony from police officers to aid the jury in understanding the evidence in controlled substances cases. *People v Ray*, 191 Mich App 706, 707; 479 NW2d 1 (1991). MRE 702 allows for expert testimony and provides as follows:

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise if (1) the testimony is based on scientific facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts if the case.

In order for the expert testimony to be admissible, "(1) the expert must be qualified; (2) the evidence must serve to give the trier of fact a better understanding of the evidence or assist in determining a fact in issue; and (3) the evidence must be from a recognized discipline." *Murray*, 234 Mich App at 53 (internal quotation marks and citation omitted). This procedure was not followed in the case at hand.

Nonetheless, apart from Singleton's testimony, the prosecutor introduced sufficient evidence that alone established defendant's guilt. Brittich testified extensively, and in detail, about defendant's involvement in the manufacture of methamphetamine on the night in question, and items consistent with the manufacture of methamphetamine were recovered from the residence. Additionally, defendant's NPLEx record, which documented a significant amount of Sudafed purcahses made during the six-month period preceding defendant's arrest, supported the inference that defendant was involved in the manufacture of methamphetamine. Defendant attempted to hide from police on the night he was arrested. Given this evidence, any error in not qualifying Singleton as an expert witness was harmless. See *Williams*, 240 Mich App at 321.[1]

---

[1] We do find problematic Singleton's statement that "normal people using Pseudoephedrine for legitimate purposes do not receive blocks." This testimony is problematic because it suggests that a possible "innocuous[] event[] [is] indicative of criminal activity." *Murray*, 234 Mich App at 53. But defendant admitted that he made the purchases documented in the NPLEx report and

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that his trial counsel was ineffective for failing to object to the Singleton's challenged testimony. A defendant's claim to ineffective assistance of counsel " 'is a mixed question of fact and constitutional law.' " *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d (2002). Because "defendant did not move in the trial court for a new trial or an evidentiary hearing" based on his claim that trial counsel was ineffective in handling Singleton's testimony, our "review is limited to mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

"To establish ineffective assistance of counsel, the defendant must first show: (1) that counsel's performance fell below the objective standard of reasonableness under the prevailing professional norms, and (2) that there is reasonable probability that, but for the counsel's error, the result of the proceeding would have been different." *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000). In order to meet the second requirement, a defendant must show that counsel's error was so serious that the defendant was deprived of a fair trial. *LeBlanc* 465 Mich at 578.

Defendant's counsel could have opted not to object to Singleton's testimony out of trial strategy. Defendant's strategy at trial was not to deny that methamphetamine production took place at the residence, but to argue that the evidence did not support the conclusion that defendant was involved in the manufacture of methamphetamine on the night in question. Indeed, counsel's cross-examination of Singleton was focused on placing sole responsibility for the lab onto Brittich. In light of this strategy, it makes sense for defense counsel not to contest Singleton's qualifications. With respect to Singleton's statements regarding "normal" purchasers of pseudoephedrine, counsel may well have decided not to draw the jury's attention to the isolated statement by objecting. *Horn*, 279 Mich App at 40. In sum, defendant has failed to overcome the strong presumption that counsel engaged in sound trial strategy. *Id*.

Further, if defense counsel had objected to the admission of Singleton's testimony on the ground that he had not been qualified as an expert, the prosecutor could have moved to qualify him as an expert. And given Singleton's training and experience, the court would likely have qualified him as an expert. For example, Singleton testified that while he was with the St. Clair County Drug Task Force for "over three years," he attended "numerous courses" relating to narcotics, narcotics trafficking, and clandestine drug laboratories, "including but not limited to methamphetamine." He also testified that he received recertification once a year "to respond back into methamphetamine laboratories," and that he had personally dismantled "70 to 75" methamphetamine laboratories. Defense counsel could have reasonably decided that any challenge to Singleton's qualification as an expert witness would have been futile. See

testified that he made them at Brittich's request without knowing that Brittich was using the pseudoephedrine to make methamphetamine. Thus, defendant essentially argued not that he was a legitimate user of Pseudoephedrine, but that he was an unknowing pawn of Brittich in acquiring methamphetamine precursor for him. Given defendant's own argument and the weight of the other evidence adduced, this single statement by Singleton was not outcome determinative.

MRE 702. Defense counsel is not ineffective for failing to make a futile objection. *People v Horn*, 279 Mich App 31, 39-40; 755 NW2d 212 (2008).

Finally, defendant cannot demonstrate prejudice arising from his counsel's lack of objection to Singleton's testimony. In light of the other evidence of his guilt offered at trial, including Brittich's testimony and defendant's behavior when police entered Brittich's home, Singleton's testimony was not outcome determinative. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra