*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
May 11, 2023

v

No. 356964
Isabella Circuit Court
LC No. 2020-001145-FH

UNDRA WILL SPEARMAN,

Defendant-Appellant.

Before: BOONSTRA, P.J., and GADOLA and YATES, JJ.

PER CURIAM.

Defendant, Undra Will Spearman, appeals his two convictions by jury verdict of delivery of methamphetamine (second or subsequent offense), MCL 333.7401(2)(b)(*i*) and MCL 333.7413, and conspiracy to deliver methamphetamine, MCL 750.157a and MCL 333.7401(2)(b)(*i*). The trial court sentenced defendant, as a fourth-offense habitual offender under MCL 769.12, to serve concurrent prison terms of 154 months to 40 years in prison. We affirm.

## I. FACTUAL BACKGROUND

On September 22, 2020, defendant was caught selling methamphetamine to a confidential informant in a transaction that was scripted and monitored by law-enforcement officers from start to finish. Defendant, Demetreon Adams, and Carley Rodman traveled from Jackson to Shepherd, Michigan, to meet one of defendant's regular customers to sell him methamphetamine. After the buyer, a confidential informant for the Mid-Michigan Investigative Narcotics Team, changed the meet-up location from a McDonald's parking lot to a park-and-ride lot, defendant handed the buyer a box that contained 7.9 ounces of methamphetamine and the buyer then gave defendant $4,000 in prerecorded bills. Detective Kipp Moe observed the transaction in the park-and-ride lot. After the transaction was finished, Trooper Jacob Gillis conducted a traffic stop of defendant's vehicle and found Rodman in the passenger's seat with $200 in prerecorded bills, defendant in the driver's seat with $400 in prerecorded bills, and Adams in the back seat with $3,400 in prerecorded bills, which accounted for the entire purchase price of $4,000. Law-enforcement officers searched the buyer after the transaction was finished and obtained 7.9 ounces of methamphetamine that the buyer had received from defendant.

Defendant chose to contest the charges against him at a preliminary examination, on appeal of the bindover decision, and at trial. Defendant's counsel filed three pretrial motions that the trial court addressed on the merits. When defendant's trial started on March 15, 2021, defense counsel handled the jury-selection process. When the trial resumed for the second day on March 22, 2021, however, defendant informed the trial court that he wanted to represent himself. In response, the trial court painstakingly advised defendant of the risks of self-representation, received defendant's statement that he wanted to serve as his own counsel in spite of the risks, and authorized defendant to represent himself at trial with his attorney available as standby counsel. Defendant confirmed that he wanted his attorney to serve as his standby counsel.

On the third day of trial, March 23, 2021, the jury rendered its verdict, finding defendant guilty of delivering methamphetamine and conspiring to deliver methamphetamine. The trial court then sentenced defendant on April 15, 2021, to serve concurrent prison terms of 154 months to 40 years on the two counts of conviction. Defendant subsequently moved for a new trial or a *Ginther* hearing,[1] which the trial court heard and denied in a written opinion issued on April 1, 2022. This appeal of right followed.

## II. LEGAL ANALYSIS

Defendant's attorney has advanced three issues on appeal: (1) ineffective assistance of trial counsel and defendant's self-representation; (2) the admission of purported drug-profile evidence; and (3) the admission of evidence that defendant invoked his right to counsel in response to queries from the arresting law-enforcement officers. Defendant has augmented that presentation with four issues advanced in a Standard 4 brief.[2] We shall address each of these issues in turn.

### A. INEFFECTIVE ASSISTANCE OF COUNSEL AND SELF-REPRESENTATION

Defendant presents a convoluted argument about the deprivation of effective assistance of counsel that prompted him to make the unwise decision to represent himself at trial. According to Michigan law, " 'a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of "effective assistance of counsel." ' " *People v Kevorkian*, 248 Mich App 373, 419; 639 NW2d 291 (2001). Nor can defendant "suggest that his free choice to represent himself, standing alone, denied him effective assistance of counsel." *Id.* Thus, defendant attempts to tie his free choice to represent himself to the tardy pretrial motions his attorney filed, and thereby excuse his decision to represent himself as the byproduct of ineffective assistance of counsel. For several reasons, this bit of legal legerdemain cannot work.

Prior to trial, defendant's attorney filed three motions: (1) a "motion to quash the bindover [and] motion to suppress" filed on February 25, 2021; (2) a motion to dismiss filed on March 10,

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] Defendant properly filed his own brief under Michigan Supreme Court Administrative Order No. 2004-6, Standard 4. See 471 Mich c, cii (2004). We have consistently described such a submission as a "Standard 4 brief."

2021; and (3) a motion for evidentiary hearing and to suppress evidence filed on March 12, 2021. The trial court addressed and denied each one of those motions on the merits, even though the trial court described the second and third motions as "late."[3] The prosecutor characterized the motions as "frivolous motions [filed] at the 11th hour[,]" but the trial court carefully analyzed each motion and rendered detailed, well-reasoned explanations for denying the motions. During oral argument on the second motion on March 12, 2021, defendant engaged in a lengthy discussion with the trial court about the merits of the motion, reflecting defendant's personal belief in that motion. Thus, defendant's argument now that his attorney's handling of the motions was ineffective rings hollow.

More significantly, when defendant asked on the second day of trial to represent himself, he made no mention of dissatisfaction with his attorney's representation thus far. Instead, he told the trial court simply and directly that he wanted to represent himself at trial. During the colloquy at which the trial court tested defendant's commitment to that request, defendant did not say one word about ineffective assistance of counsel. Instead, he confirmed that he wanted his attorney to remain on the case as standby counsel. Therefore, the trial record provides no support whatsoever for defendant's current position that his attorney's purportedly ineffective assistance in the pretrial phase of the case forced him to represent himself during the trial.

Michigan guarantees the right to have the assistance of counsel in a criminal proceeding. Const 1963, art 1, § 20. "[T]he right to counsel is the right to the effective assistance of counsel." *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant claiming ineffective assistance " 'must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' " *Id*. at 688. The defendant must also show that there was a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. Defendant cannot make that showing. The evidence against defendant at trial was so overwhelming as to constitute an airtight case for guilt on both charges. The entire transaction supporting the charges was monitored by law-enforcement officers, defendant and his passengers were found with prerecorded currency, and the confidential informant turned over to a law-enforcement officer the methamphetamine supplied by defendant. Thus, any claim of ineffective assistance of counsel necessarily fails in this case.

## B. DRUG-PROFILE EVIDENCE

At trial, the prosecutor asked two witnesses who were law-enforcement officers about the significance of defendant dividing among others the $4,000 he received for the methamphetamine. One officer responded that, "in our line of work a lot of people, I guess they call them middle men . . . facilitate drug deals." The other officer stated that dividing money is "associated with people who may have facilitated, assisted, transported a suspect to the actual buy itself so they could get paid with some of the money that the suspect received." Defendant did not object to that testimony, so our review is limited to a search for plain error that affected substantial rights. *People v Posey*,

---

[3] The trial court heard oral argument and then resolved defendant's second motion from the bench on March 12, 2021. As the trial court explained, that motion requested dismissal of the charges on the basis of *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978). The trial court resolved the third motion from the bench after jury selection on March 15, 2021. That motion sought dismissal of the charges based upon entrapment.

334 Mich App 338, 346; 964 NW2d 862 (2020). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.*

As an initial matter, we reject defendant's characterization of the testimony about sharing money as drug-profile evidence, meaning "a compilation of otherwise innocuous characteristics that many drug dealers exhibit, such as the use of pagers, the carrying of large amounts of cash, and the possession of razor blades and lighters in order to package crack cocaine for sale." *People v Murray*, 234 Mich App 46, 52-53; 593 NW2d 690 (1999). Defendant sold methamphetamine in this case, so his status as a drug dealer was not established merely because of any "compilation of innocuous characteristics that many drug dealers exhibit[.]" See *id.* Instead, the testimony helped the jurors understand the significance of a drug dealer like defendant sharing proceeds from a drug sale with others in his presence. Without question, such testimony could be presented through an expert witness familiar with the drug trade. See *People v Ray*, 191 Mich App 706, 708; 479 NW2d (1991). Both of the law-enforcement officers who testified about the significance of dividing the money had sufficient qualifications to offer expert testimony about the drug trade. The prosecution did not attempt to qualify either witness as an expert, but the testimony they offered did not rise to the level of plain error given their backgrounds and experience.

Beyond that, the testimony of the two law-enforcement officers about the significance of dividing money did not affect defendant's substantial rights. As we have explained, the evidence against defendant was overwhelming. The drug transaction was monitored by law-enforcement officers, defendant and his passengers were found with prerecorded currency, and the confidential informant turned over to a law-enforcement officer the methamphetamine that defendant supplied. Two of those law-enforcement officers provided testimony about the division of money that aided the jurors in the "determination of a fact in issue[,]" i.e., whether the people in defendant's vehicle were involved in conspiring with him to deliver methamphetamine. See MRE 701. Accordingly, their testimony did not constitute plain error that affected defendant's substantial rights.

C. INVOCATION OF THE RIGHT TO COUNSEL

Defendant contends that his constitutional rights under the Fifth Amendment to the United States Constitution were infringed when the prosecution elicited testimony that defendant invoked his right to counsel in response to questioning by the police. Specifically, the following exchange took place between the prosecutor and Detective Ryan Nau on direct examination:

Q: You attempted to interview Mr. Spearman?

A: With Detective Frisch, yes.

Q: Mr. Spearman say anything?

A: He initially agreed to waive his rights and speak with us. And then we started to ask questions [and] he advised he wanted a lawyer.

-4-

Defendant insists that Detective Nau's response compromised the Fifth Amendment right against self-incrimination. But defendant failed to object to those questions and answers, so we may only review that claim for plain error that affected defendant's substantial rights. See *Posey*, 334 Mich App at 346.

As a general rule, it is "improper for the prosecutor to question [a law-enforcement officer] regarding defendant's invocation of his right to counsel during his prior arrest." *People v Knapp*, 244 Mich App 361, 383-384; 624 NW2d 227 (2001). But a single, brief reference to a defendant's invocation of the right to counsel may not amount to a constitutional violation "if the reference is so minimal that [the right to counsel] 'was not submitted to the jury as evidence from which it was allowed to draw any impermissible inference . . . .' " *People v Shafier*, 483 Mich 205, 214-215; 768 NW2d 305 (2009). Here, the prosecutor received a response from the law-enforcement officer on the witness stand that touched upon defendant's invocation of his right to counsel, but then the prosecutor left the matter alone, defendant did not object, and the jury was never asked to use defendant's invocation of his right to an attorney to infer that defendant had done anything wrong. Therefore, we conclude that the single, passing reference to defendant's invocation of his right to counsel did not affect his substantial rights, especially given the strength of the evidence presented against defendant. *People v Borgne*, 483 Mich 178, 196-202; 768 NW2d 290 (2009). Because we find no plain error that affected substantial rights, defendant is not entitled to any relief based upon the single, passing reference to his invocation of the right to counsel.

## D. ISSUES RAISED IN STANDARD 4 BRIEF

Defendant has filed a Standard 4 brief that raises four issues. First, he asserts that he was improperly bound over to the circuit court on insufficient evidence. Second, he contends that his right to confrontation under the Sixth Amendment to the United States Constitution was violated when law-enforcement officers testified at trial about statements the confidential informant made to them. Third, he claims that his attorney (who was ultimately his standby counsel) provided him with ineffective assistance of counsel. Fourth, he insists that the prosecutor and the witnesses that he called to testify at trial misled the trial court and the jury. None of defendant's arguments merits any relief on appeal.

With respect to defendant's challenge to the decision to bind him over for trial in the circuit court, we review a motion to quash for an abuse of discretion. *People v Miller*, 288 Mich App 207, 209; 795 NW2d 156 (2010). In *People v Dunham*, 220 Mich App 268, 276-277; 559 NW2d 360 (1996), we ruled that "because sufficient evidence was presented at trial to convict defendant of [the charged crime], error, if any, in the bindover would be harmless." Similarly, in *People v Green*, 313 Mich App 526, 530; 884 NW2d 838 (2015), we concluded that "[a] defendant may not appeal whether the evidence at the preliminary examination was sufficient to warrant a bindover if the defendant was fairly convicted of the crimes at trial." Finally, in *People v Wilson*, 469 Mich 1018; 677 NW2d 29 (2004), our Supreme Court stated that "[i]f a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover." This well-established principle forecloses defendant's contention that the alleged defects at his preliminary examination render the bindover and his subsequent convictions at trial invalid.

-5-

Defendant next claims that a law-enforcement officer improperly testified about statements made by the confidential informant, thereby violating the constitutional right to confrontation. But the confidential informant testified at defendant's trial, so defendant was not deprived of his right to confront the confidential informant. "The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness." *People v Watson*, 245 Mich App 572, 584; 629 NW2d 411 (2011). Because the confidential informant testified at trial and underwent cross-examination, the claim that defendant was denied his right to confrontation is meritless. *Id*. at 584-585. Defendant further insists that a Confrontation Clause violation occurred when statements by Rodman were introduced at trial, but defendant never made this argument in the trial court, so we must review this challenge strictly for plain error that affected substantial rights. Given the overwhelming evidence of defendant's guilt, we need not attempt to make sense of defendant's muddled Confrontation Clause challenge to the admission of Rodman's statements.

Defendant claims ineffective assistance of counsel based on his attorney's failure to object to the delay in defendant's circuit-court arraignment, which should have occurred within 14 days of the bindover to circuit court. See MCL 766.13. But "[u]nless the defendant demonstrates actual prejudice, failure to hold the arraignment on the scheduled date is to be deemed harmless error." MCR 6.113(A). Defendant was bound over at the preliminary examination on January 15, 2021, and his arraignment was set for February 5, 2021, but it did not take place until February 22, 2021. Nevertheless, defendant has made no showing of prejudice resulting from that delay, so he cannot obtain any relief on appeal. Moreover, his claim of ineffective assistance of counsel on that ground necessarily fails for want of prejudice.

Finally, defendant makes a sweeping allegation that the prosecutor elicited false testimony, fabricated evidence, made inappropriate arguments, and improperly vouched for the credibility of the confidential informant. This hodgepodge of unpreserved errors is subject to review simply for plain error that affected defendant's substantial rights. Defendant implores us to conclude that the prosecutor must have knowingly presented false testimony because inconsistencies in the various witnesses' accounts surfaced at trial. For example, Detective Nau admitted that, at the preliminary examination, he had mistakenly referred to the box containing the methamphetamine as dark green instead of black. Also, the confidential informant explained that a "guy in the backseat" took the box from the back seat and handed it to defendant, whereas a law-enforcement officer testified that the box was taken from the "cargo area," not the back seat. But such minor inconsistencies do not establish that the prosecutor knowingly presented false testimony. *People v Bass*, 317 Mich App 241, 275; 893 NW2d 140 (2016). The confidential informant stated that the controlled transaction was very stressful for him and that the stress "may have caused [him] to not remember every single thing that took place that day." Similarly, the drug deal was observed by law-enforcement officers, whose memories of minute details did not always align.

In his closing argument, the prosecutor conceded that there were inconsistencies, stating:

> Unfortunately, not everyone came in and testified exactly the same. I—honestly, I submit to you that that's more believable, that's more credible. They had come in, their stories didn't all align. They didn't sit there, we didn't coach them, we didn't have everybody versed on what to say. No, they came in and they

told the truth as they knew it. And it's unfortunate but it didn't always line up. But the key details did. The main things all did line up.

\* \* \*

[A confidential informant] only gets his deal if he tells the truth. Not if he tells us what we want to hear, but if he tells the truth. That's the important thing to understand.

Defendant contends that the prosecutor improperly vouched for the witnesses by making those arguments. But a prosecutor may argue that a witness has no reason to lie as long as the prosecutor does not imply special knowledge of the witness's truthfulness. *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). Although defendant faults the prosecutor for not conceding all of the inconsistencies in the evidence, the prosecutor was not obligated to recite every detail from the case. In sum, the prosecutor properly handled the minor inconsistencies that emerged at trial, so defendant is not entitled to any relief on the basis of the insubstantial inconsistencies. Although defendant implies that he must be not guilty because of inconsistencies in the evidence presented, the prosecutor accurately explained that the primary details were consistent—a controlled buy took place and was closely observed by law-enforcement officers, the confidential informant ended up with methamphetamine, and the people in defendant's vehicle wound up with the prerecorded bills in their possession. All of that plainly supports defendant's two convictions by jury verdict.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Christopher P. Yates