*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROMELOW DEJON WILKIE,

        Defendant-Appellant.

UNPUBLISHED
February 28, 2019

No. 338007
Jackson Circuit Court
LC No. 16-005154-FH

Before: M. J. KELLY, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendant, Romelow Dejon Wilkie, appeals as of right his jury trial convictions of possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*); and resisting or obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant to 3 to 20 years' imprisonment for the possession with intent to deliver less than 50 grams of heroin conviction and to one to two years' imprisonment for the resisting or obstructing a police officer conviction. We affirm.

On September 21, 2106, an unidentified woman returned a pair of jeans to a clothing store. The store clerk handling the return noticed something in the pocket of the jeans, a bag containing what was later identified as 11.14 grams of heroin. Defendant called the store the next day, indicating to a store clerk that those jeans belonged to him, that his sister had returned them, and that he wanted to repurchase the jeans. Defendant returned to the store shortly after the phone call, and the clerk removed the item from the pocket before defendant's repurchase of the jeans. After the repurchase, defendant quickly returned to the store telling the store clerk that he was looking for his house keys that had been in the pocket of the jeans. By that time, the store clerk had looked in the bag and then taken it to her manager. Defendant looked around the store and in the trash to try to locate the lost item. Defendant came back to the store several times that day, more and more upset, and inquiring about his lost item. On his last visit to the store, a police officer was there investigating the item found in the jeans. When the officer asked defendant if he could talk to him, defendant ran from the officer. He was apprehended and convicted of two charges, as indicated above.

Defendant first argues that there was insufficient evidence presented at trial to prove (1) that he possessed the drugs found in the pocket of the jeans returned to the store by another and (2) that he had the intent to deliver the drugs. We disagree.

This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). We review the evidence in the light most favorable to the prosecution, and determine whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). In applying this standard, we "must draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Cameron*, 291 Mich App 599, 613; 806 NW2d 371 (2011) (quotation marks and citation omitted). And, the prosecution is not required to disprove every plausible alternative explanation of the evidence proffered by a defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

To convict a defendant of possession with intent to deliver a controlled substance, the prosecution must prove: (1) that the substance was a narcotic, (2) the weight of the substance, (3) that the defendant was not authorized to possess the substance, (4) that the defendant knowingly possessed the substance, and (5) that the defendant intended to deliver it. MCL 333.7401(2)(a)(*iv*); *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005). Defendant only challenges the last two elements—possession and intent to deliver.

Sufficient evidence was presented at trial for the jury to conclude that defendant possessed the heroin. Proof of constructive possession is sufficient to satisfy the element of possession; the prosecution thus need not prove actual physical possession. *People v Cohen*, 294 Mich App 70, 76; 816 NW2d 474 (2011). Constructive possession requires that the defendant knew that the substance was present and had the right to exercise control over it. *Id*. A fact-finder may find that constructive possession exists when the totality of the circumstances indicates "a sufficient nexus between the defendant and the controlled substance." *Id*. at 76-77.

In this case, there was no direct evidence that defendant actually possessed the heroin. Instead, the evidence produced at trial showed that he constructively possessed the heroin. Defendant told the store clerk that the pants with the heroin in the pocket belonged to him. He also returned to the store repeatedly, after realizing that the drug package was no longer in the pocket when he rebought the pants. Defendant came back to the store, becoming more and more frantic, looking for the item contained in the jeans pocket. A reasonable fact-finder could find, through the circumstantial evidence and reasonable inferences from the evidence, that defendant knew the heroin was in the pants and had the right to exercise control over the heroin before the pants were returned. See *Cohen*, 294 Mich App at 76.

Defendant also claims that the heroin could have belonged to the woman who returned the pants. However, the store clerk who spoke to defendant on the phone testified that defendant told her that his sister had returned the jeans and that they belonged to him. Moreover, the prosecution need not negate every reasonable theory of innocence but must only prove its own theory beyond a reasonable doubt in the face of whatever contradictory evidence is presented. *People v Carson*, 189 Mich App 268, 269; 471 NW2d 655 (1991). Considering the totality of the circumstances and viewing the evidence in a light most favorable to the prosecution, a

rational trier of fact could find that a sufficient nexus existed between defendant and the drugs to find constructive possession. See *Cohen*, 294 Mich App at 76-77.

There was also sufficient evidence of an intent to deliver the narcotics. With regard to intent, "[a]ctual delivery is not required to prove intent to deliver." *People v Fetterley*, 229 Mich App 511, 517; 583 NW2d 199 (1998). Intent can be inferred from the facts and circumstances. *Id.* at 517-518. Intent to deliver can also be inferred from the quantity and packaging of the drugs and the circumstances of the arrest. *People v Hardiman*, 466 Mich 417, 422 n 5; 646 NW2d 158 (2002). Minimal circumstantial evidence is sufficient to prove intent. *Fetterley*, 229 Mich App at 518.

A police expert in narcotics activity testified that 11.14 grams is a large quantity of heroin. The expert further testified that, in his opinion, the quantity of heroin, the compressed way that the heroin was packaged compared to the way that heroin is normally packaged for sale to users, the high value of the heroin, and the concerned manner in which defendant kept coming back to the store looking for something were all indications that the heroin was not for personal use. All of these facts are circumstantial evidence. However, viewed as a whole and in a light most favorable to the prosecution, the evidence was sufficient for a rational fact-finder to conclude that defendant possessed the heroin with the intent to deliver it.

Defendant next argues that because the jury was exposed to an extraneous influence and there was a real and substantial possibility that the influence affected the jury's verdict the trial court should have granted his motion for a mistrial and for a new trial. We disagree.

A trial court's decision to grant or deny a motion for a new trial is reviewed for an abuse of discretion. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Whether a jury's exposure to extraneous information denied defendant his constitutional rights necessarily involves a question of constitutional law. See *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). We review constitutional issues de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

Criminal defendants have a constitutional right to a fair and impartial jury. *Budzyn*, 456 at 88.

> During their deliberations, jurors may only consider the evidence that is presented to them in open court. Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." [*Id.* (citations omitted)]

In order to establish that the extrinsic influence was error requiring reversal, the defendant must initially prove (1) that "the jury was exposed to extraneous influences" and (2) that "these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict." *Id.* at 88-89. Once the defendant has met this initial burden, the

burden shifts to the prosecution to "demonstrate that the error was harmless beyond a reasonable doubt." *Id*.

In order to prove that "a real and substantial possibility of prejudice" existed, the defendant must "demonstrate that the extraneous influence is substantially related to a *material aspect of the case* and that there is a *direct connection between the extrinsic material and the adverse verdict*." *Id*. at 89 (emphasis added). To decide whether extrinsic information created a "real and substantial possibility of prejudice," a court may consider the following factors:

> (1) whether the material was actually received, and if so how; (2) the length of time it was available to the jury; (3) the extent to which the juror discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict. [*Id*. at 89 n 11.]

Here, there is no dispute that the jury was exposed to extraneous information. It is clear from the record that all of the jurors, either through direct observation or later discussion, believed that defendant was filming or taking pictures of them in the hallway outside of the courtroom during the lunch break on the first day of the two-day trial. The jury sent a note to the trial court indicating this belief. Thus, defendant has met the first prong of the *Budzyn* test. See *id*. at 88-89. However, defendant has failed to show that there is a "real and substantial possibility of prejudice" because he cannot show that there is a "direct connection between the extrinsic material and the adverse verdict." *Id*. at 89.

This Court previously granted defendant's motion for remand and instructed the trial court to conduct an evidentiary hearing to address whether any of the jurors improperly considered extraneous circumstances during deliberations. *People v Wilkie*, unpublished order of the Court of Appeals, issued February 7, 2018 (Docket No. 338007). The record of the evidentiary hearing, which the trial court conducted on May 14, 2018, reveals that while all of the jurors observed, or discussed with other jurors, defendant's recording or photographing of them, it did not have a direct connection to the verdict. Some of those jurors admitted that it made them uncomfortable. However, every juror indicated that this incident did not affect their decision on how to vote. One juror even paraphrased the judge's instruction that the jurors' were to consider only the evidence presented during the trial. That juror indicated that she followed that instruction and did not consider the incident. All of the jurors indicated that they did not discuss the incident during deliberations. Further, as discussed above, there was sufficient evidence presented at trial for the jury to find that defendant committed the crime. We find that the trial court did not abuse its discretion in finding that the juror's testimony did not establish a "real and substantial possibility" that the incident affected the verdict and in denying defendant's motion for a new trial.

Finally, defendant argues that the trial court erred in admitting expert testimony from Officer Boulter when there was no reliable science or methodology supporting his testimony.

We review a trial court's "determination regarding the qualification of an expert and the admissibility of expert testimony" for an abuse of discretion. *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999).

Testimony from an expert witness is governed by MRE 702, which provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"An expert witness may offer an opinion only if he or she has specialized knowledge that will assist the trier of fact to understand the evidence." *People v Carll*, 322 Mich App 690, 699; 915 NW2d 387 (2018). However, a proposed expert should not be scrutinized by an overly narrow test of qualifications. *People v Whitfield*, 425 Mich 116, 123; 388 NW2d 206 (1986). The most relevant consideration in qualifying an expert is the nature and extent of knowledge and actual experience. *Carll*, 322 Mich App at 699. In controlled substance cases, the prosecution may elicit expert testimony from police officers to explain the significance of items seized and typical characteristics of drug dealing or "the modus operandi of drug dealers" in order to aid the jury's understanding of the evidence. *Murray*, 234 Mich App at 52-54, 56, 61-63 (holding that testimony about a general procedure for buying and selling drugs and that the quantity and packaging of drugs found indicated an intent to distribute was permissible expert testimony).

Here, the police expert testified that he has been a public safety officer in Blackman Township for 15 years. He provided information about the numerous narcotics cases that has worked on throughout his 15 years, which included at least several hundred arrests involving narcotics, and indicated that he received substantial narcotics training by local, state, and federal law enforcement agencies, including the DEA. Although defendant asserts that the police expert's testimony was improperly based on mere theory lacking reliable data, in controlled substance cases, expert witnesses may testify about narcotics activity in general, if it aids the jury's understanding of the evidence. *Id*. at 56; *People v Ray*, 191 Mich App 706, 708; 479 NW2d 1 (1991) (holding that the trial court did not abuse its discretion in permitting police officer to testify as expert on quality and quantity of drugs, based on his training and experience in observing drug use and drug trafficking). The police expert in this matter was clear that his testimony was not only based on his extensive training, but also based on his 15 years of experience and hundreds to thousands of narcotics cases. Accordingly, the trial court did not abuse its discretion by admitting the police officer's expert testimony. See *Id*.

Affirmed.

/s/ Michael J. Kelly
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra