*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARQUIS DEANGELO NELSON,

        Defendant-Appellant.

UNPUBLISHED
February 24, 2022

No. 353548
Calhoun Circuit Court
LC No. 19-002838-FH

Before: STEPHENS, P.J., and SAWYER and SERVITTO, JJ.

STEPHENS, J. (*dissenting*).

I respectfully dissent from the majority and would reverse defendant's conviction and sentence, and remand for a new trial. I believe admission of the testimony of two police officers, Officer Mikael Ziegler and Sergeant Kurt Roth, was erroneous, and the cumulative effect of those errors seriously prejudiced defendant such that he was denied a fair trial. I also believe that defendant was denied the effective assistance of counsel when trial counsel failed to object to the officers' testimony and request a limiting instruction related to Ziegler's drug-profile testimony.

I agree with the majority's conclusion that the testimony of Ziegler went beyond the scope of permissible drug-profile evidence and its admission was plainly erroneous. I address his testimony here to highlight why I believe that the cumulative effect of the errors prejudiced the defendant. Although drug-profile evidence is typically admissible as "background or modus operandi evidence," *People v Murray*, 234 Mich App 46, 54-55; 593 NW2d 690 (1999), it crosses an impermissible line if it "purports to comment directly or substantively on a defendant's guilt," *id*. at 56. Indeed, when an expert provides drug-profile testimony, "the expert may not move beyond an explanation of the typical characteristics of drug dealing—in an effort to provide context for the jury in assessing an alleged episode of drug dealing—and opine that the defendant is guilty merely because he fits the drug profile." *Id*. at 54. Ziegler's testimony did much more than explain "typical characteristics". After explaining the general behavior of drug dealers, Ziegler compared defendant's behavior to that of a typical drug dealer and opined that, in his expert opinion, defendant sold narcotics to Joshua Blount. He provided this testimony despite acknowledging that he was "half a football field away" and "couldn't see a direct item . . . ." Thus, Ziegler

impermissibly commented substantively on defendant's guilt and his opinions went beyond the scope of permissible drug-profile evidence and were not based on personal observation.[1]

There is an additional problem with Zeigler's testimony as to whether the defendant sold drugs to Blount. In *People v Smith*, 425 Mich 98, 106; 387 NW2d 814 (1986) (citation omitted), our Supreme Court explained that in answering the question of whether an expert's opinion is necessary in aiding the jury to decide the ultimate issue, it is helpful to use "the common-sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from" experts. While Zeigler had superior information to the ordinary juror on drug sales behaviors or patterns, the issues of whether the defendant actually sold the drugs was one where the jurors had the capacity to analyze the evidence they received and determine "intelligently and to the best possible degree" whether defendant and Blount engaged in a narcotics transaction without Ziegler's opinion on the issue. Accordingly, admission of Ziegler's testimony was plainly erroneous.

I depart from the majority opinion further in that I conclude that the admission of Roth's testimony was plainly erroneous. Roth, whose testimony preceded that of Ziegler, was not qualified as an expert and, thus, he was limited to testifying as a lay witness. Roth's testimony was, therefore, "limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701. Generally, a lay witness's testimony must not derive from scientific, technical, or other specialized knowledge based on the witness's knowledge, experience, or training. See *People v Dobek*, 274 Mich App 58, 77; 732 NW2d 546 (2007). Moreover, a lay witness's opinion testimony is generally proper when it "do[es] not involve highly specialized knowledge, and [is] largely based on common sense." *People v McLaughlin*, 258 Mich App 635, 658; 672 NW2d 860 (2003). However, "the interplay between MRE 701 and MRE 702 is somewhat unclear when a police officer provides testimony based on his or her training and experience." *People v Dixon-Bey*, 321 Mich App 490, 497; 909 NW2d 458 (2017). Regardless, "[a] witness may not opine about the defendant's guilt or innocence in a criminal case." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012).

Roth testified that, although he did *not* see what was transferred, he believed he saw a hand-to-hand drug transaction between defendant and Blount. His " belief" was not based upon his first-hand observation. A lay witness' testimony with few exceptions must be based upon observation. An expert on the other hand may use her knowledge training and experience and apply those phenomena to posited case-relevant facts and render an opinion that is not based upon personal observation. Clearly the prosecutor saw Roth as an expert witness. The prosecutor directly asked Roth, "based on your training and experience, what was your indication as to what you thought might be happening?" Roth responded, "It's a narcotic's [sic] buy, it's a hand to hand." Indeed,

---

[1] The error in admitting Ziegler's testimony was compounded by the trial court's failure to instruct the jury on how to use his testimony. Although appellate review of this issue is waived because trial counsel did not object to the instructions, *People v Meissner*, 294 Mich App 438, 458; 812 NW2d 37 (2011), consideration of the issue is permissible in the context of defendant's ineffective-assistance-of-counsel claim. Thus, it will be addressed later in this opinion.

Roth was held out as an expert by the prosecutor during her closing argument. Notably, the prosecutor, when referring to the testimony of Ziegler and Roth, stated they were "two officers [who] have specialized knowledge and they were there, and they witnessed what happened that day."

I, further, do not believe that while Roth could have been qualified as an expert, his testimony that that there was a "hand to hand" drug buy should have been excluded. As with Ziegler's opinion, it is helpful to use "the common-sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from" experts. *Smith*, 425 Mich at 106. As with Zeigler, the jurors should have been able to review the evidence and determine "intelligently and to the best possible degree" whether defendant and Blount engaged in a narcotics transaction without Roth's opinion on the issue. Thus, I believe Roth's opinion testimony was improperly admitted.

Roth's testimony is problematic for another reason: he improperly opined about defendant's guilt in this case. *Heft*, 299 Mich App at 81. When Roth opined on the basis of his "several years of training and experience" that defendant and Blount engaged in a narcotics transaction, Roth improperly gave a direct opinion about defendant's guilt. And as the majority recognizes with respect to Ziegler's opinion, Roth's opinion commented directly on the "very elements the prosecution was tasked with proving." See MCL 333.7401(2)(a)(*iv*); see also *People v Dickinson*, 321 Mich App 1, 12; 909 NW2d 24 (2017) (articulating the elements of delivery of less than 50 grams of heroin as "(1) a defendant's delivery (2) of less than 50 grams (3) of heroin or a mixture containing heroin (4) with knowledge that he or she was delivering heroin."). Accordingly, Roth's opinion about the interaction between defendant and Blount improperly opined on defendant's guilt and was erroneously admitted. *Heft*, 299 Mich App at 81.

Finding errors in the admission of the testimony of Ziegler and Roth, I conclude that the effect of those errors, when considered in the context of the credibility contest between defendant and Blount, was seriously prejudicial against defendant such that reversal is warranted because defendant was denied a fair trial. "The cumulative effect of several minor errors may warrant reversal where the individual errors would not." *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003). "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Dobek*, 274 Mich App at 106. "[T]o reverse on the basis of cumulative error, the effect of the errors must be seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *Ackerman*, 257 Mich App at 454.

In determining that the error of admitting Ziegler's testimony did not affect the outcome of defendant's trial, the majority asserts that not all of his testimony was objectionable and, even without his impermissible opinions, the remaining police evidence demonstrated defendant engaged in "typical drug-dealing behavior" and that Blount's "account of the exchange aligned with the officers' observations." But this was a clear credibility contest between defendant and Blount, and the impermissible testimony of Ziegler and Roth likely pushed jurors toward believing Blount's account of events rather than defendant's version.

Blount, in the words of the prosecutor during her closing argument, "filled in the gaps that the officers couldn't." In other words, the officers did not see what was transferred between defendant and Blount. Blount, however, confirmed that defendant sold him heroin when he

-3-

testified that he "handed the money" to defendant and defendant handed back narcotics. Defendant, on the other hand, testified that his conduct throughout the day was innocent. He testified that he stopped at various locations to give his girlfriend's brother a ride, pick up his girlfriend and her daughter, take his girlfriend to a hairdresser, and attempted to take his girlfriend's daughter to a playdate with other children while his girlfriend got her hair cut, but the children were unavailable. Defendant also testified that after leaving the apartments where the playdate was to occur, his girlfriend's daughter became upset in the car and started kicking and screaming. Defendant indicated that because his girlfriend's daughter was not in a car seat, her kicking and screaming was unsafe, so he stopped the car multiple times to try to calm down the child. Defendant testified that on one occasion when he was stopped, a man pulled up behind him and approached the driver-side window asking for directions. Defendant stated that the man had an "address written on a piece of paper" and asked whether the occupants of the vehicle knew the location. When defendant and another occupant of the vehicle denied knowing the address, the man left. The question at trial, therefore, was whose version of events was the most credible. Thus, the credibility of defendant and Blount was a central focus of this case.

Both the prosecutor and trial counsel asked questions bringing the credibility of Blount to the forefront of the case. On direct examination by the prosecutor, Blount denied receiving a benefit for testifying at defendant's trial and acknowledged he was under subpoena to testify, suggesting he was a credible witness. On cross-examination by trial counsel, however, Blount acknowledged that he was originally charged with possession of a controlled substance, a felony, but pleaded to a misdemeanor. Blount also acknowledged initially telling police officers that the "guy was out" (presumably of drugs) and Blount denied having anything on his person. Thus, trial counsel's line of questioning suggested Blount was not credible because he was offered a lesser charge in exchange for his testimony and he had lied to the police when he was initially stopped.

The prosecutor and trial counsel also made arguments focusing on Blount's credibility. During her closing argument, the prosecutor emphasized Blount's testimony that he bought narcotics from defendant and that he "didn't have anything to gain from" testifying at defendant's trial because his "case [was] over" and "he's pled [sic] to something . . . ." The prosecutor also stated that Blount "may have gotten a little bit of a benefit for testifying previously at other hearings in this case, but there's nothing to make him testify here today or yesterday rather, at the trial, he's not gaining anything, [and he] didn't really want to be here." And the prosecutor stressed that Blount "told you what he saw and he was honest with you about what happened . . . ." The prosecutor's argument, therefore, suggested that Blount was a credible witness. Trial counsel, on the other hand, challenged Blount's credibility by pointing to the fact he could not "remember much," noting that Blount did not know defendant's name or nickname, what kind of vehicle defendant was in, and did not even know defendant. Trial counsel also noted that Blount entered the courtroom with two police officers, which, as the prosecutor noted in her rebuttal, could have been pointed out to infer that Blount was under "officer pressure" to testify. Regardless of whether the presence of the officers with Blount showed pressure from police officers to testify, or was simply a matter of witness security, it shows that Blount's credibility was a key factor in this case.

Given the importance of Blount's credibility, the effect of the errors in admitting the testimony of Ziegler and Roth was seriously prejudicial and, thus, warrants a finding that defendant was denied a fair trial. *Ackerman*, 257 Mich App at 454. In concluding that the admission of Ziegler's testimony did not affect the outcome of the proceedings, the majority relies, in part, on

the fact that Blount's "account of the exchange aligned with the officers' observations." But this is all about Blount's credibility, and the explicit opinions of two officers—one of whom had the imprimatur of being an expert—that defendant sold narcotics improperly bolstered Blount's version of events. And as will be discussed in further detail in the context of defendant's ineffective assistance of counsel claim, the trial court exacerbated the problem by not only failing to instruct the jury about the appropriate use of Ziegler's testimony, but also by giving the impression that Ziegler's opinion could be used as substantive evidence of defendant's guilt. The testimony of both Ziegler and Roth may have been what pushed jurors away from defendant's version of events and toward Blount's account. Accordingly, I believe that the cumulative effect of these errors warrants reversal.

Defendant argues that, alternatively, trial counsel was ineffective for her failure to object to the testimony of Ziegler and Roth. I agree.

Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). This Court reviews a trial court's factual findings for clear error, and any constitutional determinations are reviewed de novo. *Id*. However, when no evidentiary hearing is held, like here, this Court's review "is limited to mistakes that are apparent from the record." *Id*. at 538-539.

Defendants have the guaranteed right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). To establish a claim of ineffective assistance, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Head*, 323 Mich App at 539. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). However, such performance must be measured without the benefit of hindsight. *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995).

I agree with the majority's conclusion that trial counsel's failure to object to Ziegler's testimony constituted deficient performance. I disagree, however, with its conclusion that trial counsel's deficient performance did not prejudice defendant. As discussed earlier, Ziegler's testimony not only impermissibly compared defendant's conduct to that of a typical drug dealer, but he also opined on the issue of defendant's guilt, including by stating that, in his expert opinion, defendant sold drugs to Blount. When coupled with the failure of the trial court to instruct the jury about the appropriate use of Ziegler's testimony, and the testimony of Roth, who also impermissibly commented substantively on defendant's guilt, it is clear to me that trial counsel's failure to object to the officers' testimony prejudiced defendant. This is especially so given the credibility contest between Blount and defendant. Without objections, the testimony of Ziegler and Roth improperly bolstered Blount's version of events. Indeed, as the prosecutor stressed during her closing argument, Blount "filled in the gaps" in the officers' testimony by indicating that defendant did in fact sell him narcotics. And despite these acknowledged "gaps" in the officers' testimony, the officers still opined that defendant had sold narcotics to Blount without having seen what, if anything, was transferred between defendant and Blount.

I also believe that trial counsel's failure to object to Roth's testimony constituted deficient performance and prejudiced defendant. Unlike the majority, as noted above, I believe his "hand to hand" testimony was erroneously admitted and had a significant impact on the case outcome. Trial counsel's failure to object, therefore, constituted deficient performance. And as discussed in the context of Ziegler's testimony, trial counsel's failure to also object to Roth's opinion prejudiced defendant because of the credibility contest between defendant and Blount. Accordingly, I would find that trial counsel's failure to object to the testimony of Ziegler and Roth constituted ineffective assistance of counsel, and defendant is entitled to a new trial.

The error in admitting Ziegler's testimony was compounded by the trial court's failure to instruct the jury on how to use his testimony, and thus, trial counsel's failure to request such an instruction. Although, as the majority notes, the trial court provided some instructions about the proper use of expert testimony, it did not clearly delineate what was and was not an appropriate use of Ziegler's drug-profile testimony. See *Murphy*, 234 Mich App at 57 ("[B]ecause the focus is primarily on the jury's use of the profile, courts must make clear what is and what is not an appropriate use of the profile evidence. Thus, it is usually necessary for the court to instruct the jury with regard to the proper and limited use of profile testimony."). In fact, upon qualifying Ziegler as an expert, the trial court's instructions appear to have magnified the issue by indicating that although "[m]ost people can't give opinions when they testify," experts are "different" and can "give their opinions to help you." That is, in the context of Ziegler's testimony, the trial court's general instruction—without an additional instruction limiting the use of his profile testimony— bolstered Ziegler's testimony, most notably his opinion that defendant sold narcotics to Blount. This improperly gave the impression that Ziegler's expert opinion could be used as substantive evidence of guilt.

In conclusion, I believe admission of the testimony of Ziegler and Roth was erroneous. The cumulative effect of those errors seriously prejudiced defendant such that I believe defendant was denied a fair trial. Additionally, I believe trial counsel was ineffective for failing to object to the officers' testimony, and for failing to request an instruction limiting the use of Ziegler's testimony. Accordingly, I would reverse defendant's conviction and sentence, and remand for a new trial.

/s/ Cynthia Diane Stephens